UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH WAYNE PARKS,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY ROLFING, et al.,<br><br>Defendants. | No. 2:15-cv-1505 CKD P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding through counsel with a civil rights action pursuant to 42 U.S.C. § 1983. Currently pending are plaintiff's motion to amend the complaint (ECF No. 71) and the parties' stipulation to modify the scheduling order (ECF No. 83). Plaintiff has also filed a notice declining magistrate judge jurisdiction (ECF No. 85) in an apparent attempt to withdraw his previous consent (ECF No. 4).

I. Motion to Amend

A. Legal Standard

A court should freely grant leave to amend a pleading when justice so requires. Fed. R. Civ. P. 15(a)(2). "Liberality in granting a plaintiff leave to amend is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile. Additionally, the district court may consider the factor of undue delay." Bowles v. Reade, 198 F.3d 752, 757-58 (9th Cir. 1999) (citations omitted).

1

B.  Proposed Amended Complaint

Plaintiff has filed a motion to amend in which he seeks to file a fourth amended complaint. (ECF No. 71). The proposed amended complaint seeks to clarify the claims against the existing defendants; restore claims against defendants Lee and Schmidt, who were previously dismissed; and modify the request for relief. (Id. at 3.) Defendants oppose the motion to amend on the grounds that the claims against Lee and Schmidt are barred by the statute of limitations and that the claims against Lee further fail to state a claim. (ECF No. 77.)

With the exception of the claims against defendant Lee, which will be discussed in more detail below, the proposed amended complaint states potentially viable claims against each of the defendants and seeks to modify the requested relief and therefore does not appear to be sought in bad faith. Moreover, since the motion to amend was filed by the deadline proposed by the parties and adopted by this court (ECF Nos. 69, 70), the court does not find that the motion was the product of undue delay. Nor does the court find that the currently appearing defendants would be prejudiced by the extensions in discovery necessitated by the addition of a new defendant since the parties recently requested an extension of the existing discovery deadlines. (ECF No. 83.) However, if the claims against Lee and Schmidt are beyond the statute of limitations, as defendants claim, then amendment as to those claims would be futile.

C.  Statute of Limitations

The statute of limitations in a § 1983 action is that provided by the state for personal injury torts. Wallace v. Kato, 549 U.S. 384, 387 (2007) (citations omitted). California law provides a two-year statute of limitations for personal-injury actions, plus an additional two years of tolling for the statute of limitations based on the disability of imprisonment where the term is less than for life. Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) (citing Cal. Civ. Proc. Code §§ 335.1, 352.1). The statute of limitations is further "tolled while a prisoner completes the mandatory exhaustion process." Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005).

In arguing that plaintiff's proposed claims against Lee and Schmidt are barred by the statute of limitations, defendants use January 1, 2014, the latest date they claim the claims could have accrued, as the date from which the statute of limitations began to run. (ECF No. 77 at 5.)

Based upon this date, defendants argue that with the two-year statute of limitations and additional two years based on plaintiff's imprisonment, he had until January 1, 2018, to timely bring his claims. (Id.) However, as plaintiff points out, defendants have failed to account for the tolling that occurred as a result of plaintiff pursuing administrative remedies. (ECF No. 80 at 6.) The proposed amended complaint avers that plaintiff exhausted his administrative remedies on July 22, 2014 (ECF No. 71-1 at 18, ¶ 138), and defendants have not challenged the sufficiency of that appeal to toll the statute of limitations as it relates to the claims against defendants Lee and Schmidt. Accordingly, the statute of limitations did not begin to run until July 23, 2014, and therefore does not expire until July 22, 2018. Since the claims are not barred by the statute of limitations, the court finds that amendment would not be futile on this ground. Because the claims are not untimely, the court need not consider whether they relate back to any of the previous versions of the complaint.

### D. Conclusion

Because the court finds that leave to amend would not cause undue prejudice to the defendants, is not sought in bad faith, is not futile on account of untimeliness, and that plaintiff did not unduly delay, leave to amend will be granted. The Clerk of the Court will be directed to file the Fourth Amended Complaint, which will now be screened.[1]

## II. Screening of the Fourth Amended Complaint

### A. Statutory Screening of Prisoner Complaints

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity, regardless of whether plaintiff is represented by counsel. 28 U.S.C. § 1915A(a); In re Prison Litig. Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997) ("District courts are required to screen all civil cases brought by

---

[1] In light of the Ninth Circuit's recent decision in Williams v. King, 875 F.3d 500 (9th Cir. 2017) (no magistrate judge jurisdiction based on plaintiff's consent alone), the dismissal of defendants from the Third Amended Complaint (ECF No. 38) was defective. However, those defendants were dismissed without prejudice (id. at 2), and plaintiff, who is now represented by counsel, was free to, and in some cases did, revive his claims against those defendants in the Fourth Amended Complaint. Accordingly, any defects in the screening out of defendants in the Third Amended Complaint are mooted by the filing of the Fourth Amended Complaint.

prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel, as [§ 1915A] does not differentiate between civil actions brought by prisoners."). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Franklin, 745 F.2d at 1227-28 (citations omitted).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. (citations omitted). "'[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976), as well as construe the pleading in the

light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

B. Allegations

In the Fourth Amended Complaint, plaintiff asserts that defendants Rohlfing,[2] Miranda, Medina, Garbutt, Schmidt, and Lee were deliberately indifferent to his serious medical needs. (ECF No. 71-1.)

In 1997, plaintiff received a prosthetic cheekbone and eye orbit due to damage caused by a gunshot wound and from that time periodically suffered eye infections in his right eye. (Id. at 3, ¶¶ 15, 17.) On September 7, 2013, plaintiff's right eye began to swell and he recognized the signs of a potential eye infection. (Id. at 4, ¶ 20.) He requested treatment on September 9, 2013, and the following day he was seen by defendant Rohlfing, who prescribed antibiotics which failed to treat the infection. (Id., ¶¶ 21-22, 24-25.)

In response to requests for additional treatment for his persisting and worsening symptoms, plaintiff was seen by Rohlfing five additional times through November 26, 2013. (Id. at 5-7, ¶¶ 31-32, 35-38, 47, 48.) During that time, he was prescribed the same ineffective antibiotic an additional two times; the second time by Rohlfing despite his advisement to Rohlfing that the antibiotic had not worked the previous two times. (Id. at 4-5, ¶¶ 30, 33.) Rohlfing later prescribed additional antibiotics, though it is unclear whether he once again prescribed the ineffective antibiotic or something different. (Id. at 5, ¶ 36.)

Between September 10, 2013, and November 26, 2013, Rohlfing failed to order any x-rays or cultures, despite plaintiff's advisements that he could feel the infection pushing against his prosthetic and that the antibiotics were not working. (Id. at 5-6, ¶¶ 34, 40.) Although Rohlfing did eventually request that plaintiff be seen by an ENT and receive a CT scan, these requests were labeled routine and were not initiated until November 12, 2013, two days after plaintiff showed him the hole that had developed in his prosthesis. (Id., ¶¶ 39-41.) During the period plaintiff was

---

[2] The amended complaint notes that plaintiff previously misspelled defendant Rohlfing's name as "Rolfing." (ECF No. 71-1 at 2, ¶ 5.) The Clerk of the Court will be directed to update the docket to reflect the correct spelling of defendant Rohlfing's name.

being treated by Rohlfing, his infection continued to worsen to the point that his infection site cyst burst shortly after the ENT appointment and CT scan were requested. (Id. at 6-7, ¶¶ 44, 50.) When Rohlfing saw plaintiff about a week and a half after this incident, he told plaintiff that he had ordered him Tylenol with codeine. (Id., ¶¶ 47, 57.)

On December 5, 2013, plaintiff was seen at the clinic regarding pain medication and was notified that Rohlfing had not ordered the Tylenol with codeine. (Id. at 8, ¶ 57.) The triage nurse also advised him that the new PA, defendant Schmidt, "said naproxen and mapap were good enough without examining Plaintiff." (Id., ¶ 58.) Plaintiff put in multiple requests to be seen by a doctor and was eventually seen by defendant Schmidt on December 13, 2013. (Id., ¶¶ 59-62.) At this time, defendant Schmidt "increased pain medications, continued antibiotics and said she would enter an emergency/urgent request for facial skeletal appointment." (Id., ¶ 62.)

On December 13, 2013, defendant Garbutt rejected plaintiff's December 4, 2013 emergency medical appeal on the grounds that it did not warrant emergency processing and that it contained excessive documentation. (Id. at 17, ¶¶ 127-129). Plaintiff received the response on December 18, 2013, and due to the need to resubmit his appeal it was not assigned for a response until December 23, 2013, and was given a response deadline of February 4, 2014. (Id., ¶¶ 130-131.)

On December 19, 2013, plaintiff requested to see Schmidt about the results of the CT scan he had on December 11, 2013. (Id. at 9, ¶ 66.) He was eventually seen by Schmidt on January 2, 2014, in response to a request he had submitted the previous day regarding his prosthesis collapsing and the intense pain he was experiencing. (Id., ¶¶ 69-70.) At that time, Schmidt advised that "she would follow up on the schedule for a plastic surgeon." (Id., ¶ 70.)

On February 20, 2014, plaintiff was seen by a plastic surgeon at U.C. Davis who requested that he have another CT scan and consult. (Id. at 10, ¶ 75.) At some point he had another CT scan performed, but when he went back to the plastic surgeon on March 20, 2014, he was told that the CT scan had not been done as requested and could not be used. (Id., ¶ 80.) Plaintiff asserts that defendants Schmidt and Lee were responsible for the CT scan being performed and failed to ensure it met the requested specifications of the specialist, thereby

6

delaying his surgery and subjecting him to unnecessary pain and suffering. (Id., ¶ 81.)

It appears that between April 3, 2014, and June 23, 2014, defendants Miranda and Medina were responsible for plaintiff's treatment. (Id. at 11-15, ¶¶ 88, 90-99, 101-106, 111-112, 115-116.) On April 3, 2014, Miranda requested another CT scan. (Id. at 11, ¶ 88.) Between April 3, 2014, and April 23, 2014, defendants Medina and Miranda denied multiple requests from plaintiff for pain medication and antibiotics on the ground that he was scheduled for surgery, even though they knew that he was not scheduled for surgery and could not be scheduled until he had the correct CT scan done.[3] (Id. at 12, ¶¶ 90-93.) Then on May 22, 2014, plaintiff completed a health services request advising that a sharp, triangular point was protruding from his prostheses, but Medina recorded it "as an inflammatory skin condition/rash and scheduled him for an appointment with Defendant Miranda in seven days." (Id. at 13-14, ¶ 102.) The same day, Medina confiscated plaintiff's extra antibiotics that were a result of missed doses and documented that he was not taking his medications as directed. (Id. at 14, ¶ 103.)

On May 27, 2014, plaintiff completed another healthcare request in which he stated that his pain level was rising and that he had soreness and pain on the outside of his face. (Id., ¶ 105.) He alleges that defendant Medina noted that he was scheduled to see defendant Miranda on May 30, 2014, and had him "removed for being uncooperative," though it is not clear where he was removed from or whether he was in the middle of an examination at the time of the removal. (Id.) On May 30, 2014, plaintiff saw Miranda who told him that a culture taken on May 23, 2014, had shown no infection. (Id., ¶¶ 104, 106.)

On June 4, 2014, plaintiff was sent to U.C. Davis only to find out that the correct CT scan still had not been sent. (Id., ¶¶ 107-108.) On June 9, 2014, plaintiff was seen by defendant Miranda and requested that Miranda complete a refusal of service for the surgery because the correct CT scan still had not been sent to U.C. Davis. (Id., ¶ 111.) Another culture of plaintiff's

---

[3] Plaintiff also alleges that defendants refused his requests based on misinformation. (ECF No. 71-1 at 12, ¶ 93.) The court will assume this was a misstatement on plaintiff's part because defendants would not have been deliberately indifferent if they denied plaintiff's requests based on their subjective belief that he was scheduled for surgery and that the provision of these medications was therefore inappropriate.

7

wound was taken and came back a few days later showing "a heavy growth of Methicillin Resistant Staphylococcus Aureus (MRSA)," but plaintiff did not find out about the results until his June 23, 2014 appointment with Miranda, at which point he was given antibiotics and Tylenol with codeine. (Id. at 14-15, ¶¶ 112, 115-116.) Plaintiff underwent surgery to remove his prosthesis on June 25, 2014. (Id. at 16, ¶ 124.)

### C. Deliberate Indifference

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi, 391 F.3d at 1058. Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation

8

merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

                1.    Failure to State a Claim

There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362, 371, 376 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Additionally, "[t]here is no respondeat superior liability under section 1983." Taylor v List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)). A supervisor may be liable for the constitutional violations of his subordinates if he "knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045. Finally, supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotation marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994).

Plaintiff's allegations against defendant Lee are insufficient to state a claim for deliberate indifference. The complaint makes only a conclusory assertion that Lee was "responsible for the CT scan being performed at Lassen Banner and for failing to assure that the CT scan performed there conformed to the procedure specifically ordered by the U.C. Davis doctors." (ECF No. 71-1 at 10, ¶ 81.) However, there are no allegations that plaintiff was ever seen by defendant Lee or that Lee reviewed his records, submitted the order, or reviewed the final CT report. Furthermore, while the documents attached as Exhibit B do show Lee as the ordering physician, the specialist and CT scan reports were initialed by defendant Schmidt, indicating that she is the one who actually reviewed the records, submitted the order for the CT scan, and received the final report.

(ECF No. 71-3 at 3-5, 8.) Furthermore, it is not clear from the complaint or the attached documents whether the wrong type of CT scan was ordered or whether the scan was done incorrectly and the error was not caught on review. Since the allegations and attachments demonstrate that Schmidt was the one who reviewed the reports, and there is no respondeat superior liability under § 1983, assuming the scan was ordered incorrectly, plaintiff has shown, at most, that defendant Lee negligently signed off on the order for the scan. Since negligence is insufficient to support a claim for deliberate indifference, this claim should be dismissed.

Plaintiff also alleges that Lee showed "callous indifference" in responding to his grievance appeal because she "focused instead on process rather than outcomes." (ECF No. 71-1 at 18, ¶ 135.) However, prisoners do not have "a separate constitutional entitlement to a specific prison grievance procedure'" Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)), and any claim based solely on Lee's status as a reviewer of his grievances is not cognizable. Furthermore, plaintiff fails to allege any facts that show Lee's handling of his grievance either wrongfully delayed or denied treatment, or that his grievance alerted her to ongoing constitutional violations that she had the authority and opportunity to prevent. By the time Lee received the appeal on December 23, 2013, plaintiff had already had an initial CT scan, received increased pain medication and antibiotics, and received an urgent referral for an appointment with a specialist. (ECF No. 71-1 at 8, ¶¶ 61-62; ECF No. 71-3 at 2.) Plaintiff's allegations further show that shortly after defendant Lee received the appeal, he was transferred to the Central Treatment Center, where he remained until approximately a month after Lee responded to his appeal, and there are no allegations that the treatment he received there was deficient. (ECF No. 71-1 at 9-10, ¶¶ 71, 74.) Although plaintiff may be dissatisfied with the tone of Lee's response to his appeal and her characterization of the treatment he had received up to that point, his allegations demonstrate that at the time Lee had his appeal he was receiving treatment.

In light of the fact that plaintiff has attempted to amend the complaint four times, most recently with the assistance of counsel, and been unable to state a cognizable claim against Lee in any of the complaints, the undersigned finds that further leave to amend would be futile and will

recommend that the claims against defendant Lee be dismissed without leave to amend. <u>Chappel v. Lab. Corp. of Am.</u>, 232 F.3d 719, 725-26 (9th Cir. 2000) ("A district court acts within its discretion to deny leave to amend when amendment would be futile." (citation omitted)).

### 2. Claims for Which a Response Will Be Required

Plaintiff's allegations that defendant Rohlfing continued to prescribe the same, ineffective antibiotic, delayed in ordering any kind of diagnostic testing, and failed to input the order for pain medication, which all led to plaintiff's prolonged suffering and the worsening of his infection, are sufficient to state a claim for deliberate indifference. The allegations that defendant Schmidt denied him increased pain medication without an evaluation and then failed to either properly submit the order for the CT scan requested by the specialist or notice that the wrong type of CT scan was done are also sufficient to state a claim for deliberate indifference. Similarly, the allegations that defendant Medina delayed plaintiff's ability to see defendant Miranda and that both defendants refused to provide pain medication and antibiotics state claims for relief. Finally, the claim that defendant Garbutt delayed plaintiff's appeal by refusing to process it as an emergency appeal and rejecting it for having excessive documentation states a claim for deliberate indifference because, unlike with defendant Lee, at the time plaintiff originally submitted his appeal to Garbutt, he had yet to receive proper pain medication and diagnostic testing and the improper rejection arguably delayed his treatment. These defendants will therefore be required to respond to the Fourth Amended Complaint.

### III. Modification to Scheduling Order

In light of the motion to amend the complaint being granted, the deadlines in the October 16, 2017 scheduling order which the parties sought to enlarge will be vacated and the parties' stipulation to modify the scheduling order will be denied as moot. New deadlines will be set once defendants have answered the amended complaint.

### IV. Withdrawal of Consent

Although a party in a civil case has a constitutional right to have his case adjudicated by an Article III judge, that right can be waived. <u>Dixon v. Ylst</u>, 990 F.2d 478, 479 (9th Cir. 1993) (citation omitted). Once consent to magistrate judge jurisdiction has been given, "[t]here is no

11

absolute right, in a civil case, to withdraw consent to trial and other proceedings before a magistrate judge." Id. at 480 (citation omitted); United States v. Neville, 985 U.S. 992, 1000 (9th Cir. 1993) ("Although . . . waiver of a constitutional right, 'should not, once uttered, be deemed forever binding,' there is no absolute right to withdraw consent once granted. (quoting United States v. Mortensen, 860 F.2d 948, 950 (9th Cir. 1988))); see also Carter v. Sea Land Servs., Inc., 816 F.2d 1018, 1021 (5th Cir. 1987) ("Once a right, even a fundamental right, is knowingly and voluntarily waived, a party has no constitutional right to recant at will."). Consent "can be withdrawn by the court only 'for good cause shown on its own motion, or under extraordinary circumstances shown by any party.'" Dixon, 990 F.2d at 480 (quoting 28 U.S.C. § 636(c)(6); Fed. R. Civ. P. 73(b); Fellman v. Fireman's Fund Ins. Co., 735 F.2d 55, 58 (2d Cir. 1984)).

Shortly after initiating this case, plaintiff consented to magistrate judge jurisdiction. (ECF No. 4.) After defendants were served, they initially declined magistrate judge jurisdiction and a district judge was assigned to this case. (ECF Nos. 44, 46.) However, defendants recently chose to consent to magistrate judge jurisdiction (ECF No. 82), and the case was referred back to the undersigned for all further proceedings and entry of final judgment (ECF No. 84). After the case was referred back to the undersigned, plaintiff filed a notice declining magistrate judge jurisdiction (ECF No. 85), which was accompanied by a declaration by counsel (ECF No. 86). In the declaration, counsel acknowledges that his client consented to magistrate judge jurisdiction while proceeding pro se. (Id. at 1, ¶ 1.) He further claims that plaintiff has not consented to magistrate judge jurisdiction because he stated in the joint status report that he did not agree to proceed before a magistrate judge. (Id. at 2-3, ¶¶ 8, 10.) The newly filed declination and declaration will be construed as a request to revoke consent and will be denied.

As counsel acknowledges, his client previously consented to magistrate judge jurisdiction. (ECF No. 4.) Accordingly, plaintiff cannot withdraw his consent without first showing good cause or extraordinary circumstances warranting the withdrawal. Neither the joint status report (ECF No. 69-1 at 3), nor the declaration asserting that plaintiff has not consented (ECF No. 86), demonstrate that good cause or extraordinary circumstances exist. Although the parties were directed to address whether the case would be tried before a magistrate judge or district judge in

12

their joint status report (ECF No. 60), that direction was not an invitation to revoke previously given consent without making the required showing. Since plaintiff has failed to demonstrate good cause or extraordinary circumstances exist, his request to withdraw consent will be denied.

Although plaintiff's request to withdraw consent will be denied, because the amended complaint fails to state a claim against defendant Lee, referral back to the district judge is necessary in order to properly dismiss Lee from this action. Williams v. King, 875 F.3d 500, 503 (9th Cir. 2017). Furthermore, defendant Schmidt must also be given an opportunity to consent to or decline magistrate judge jurisdiction. In the event defendant Lee is properly dismissed and defendant Schmidt either consents to magistrate judge jurisdiction or is dismissed for lack of service, the undersigned will recommend that this case be referred back for all further proceedings and entry of final judgment. If defendant Schmidt declines magistrate judge jurisdiction, or if any of the currently appearing parties demonstrates good cause or extraordinary circumstances for withdrawing their consent, the case will remain assigned to District Judge Kimberly J. Mueller.

Accordingly, IT IS HEREBY ORDERED that:

1. The deadlines set forth in paragraphs 4-7 of the October 16, 2017 scheduling order (ECF No. 70 at 2) are vacated.

2. The parties' stipulation to modify the scheduling order (ECF No. 83) is denied as moot.

3. Plaintiff's request to withdraw his consent to magistrate judge jurisdiction (ECF Nos. 85, 86) is denied.

4. Plaintiff's motion to amend the complaint (ECF No. 71) is granted.

5. The Clerk of the Court is directed to separately file the Proposed Fourth Amended Complaint, currently attached as exhibits to the motion to amend (ECF Nos. 71-1, 71-2, 71-3), and designate it the Fourth Amended Complaint.

6. The Clerk of the Court is directed to update the docket to correct the spelling of defendant Rohlfing's name from "Rolfing" to "Rohlfing."

7. Within twenty-one days of service of this order, defendants Rohlfing, Miranda,

1 | Medina, and Garbutt shall respond to the complaint as set forth above.

2 |   8. Service is appropriate for defendant Schmidt.

3 |   9. Within fourteen days from the date of this order, plaintiff's counsel shall complete the attached Notice of Submission of Documents and submit the following documents to the court:

  a. The completed Notice of Submission of Documents;

  b. One completed summons;

  c. One completed USM-285 form for defendant Schmidt;

  d. One copy of this order; and

  e. Two copies of the endorsed Fourth Amended Complaint.

  10. Plaintiff need not attempt service on defendant and need not request waiver of service. Upon receipt of the above-described documents, the court will direct the United States Marshal to serve the above-named defendant pursuant to Federal Rule of Civil Procedure 4 without payment of costs.

  11. The Clerk of the Court is directed to re-assign District Judge Kimberly J. Mueller to this matter.

  IT IS FURTHER RECOMMENDED that the claims against defendant Lee be dismissed without leave to amend.

  These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 9, 2018

_/s/ Carolyn K. Delaney_
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

13:park1505.amend.screen.misc

14